# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00056-CV

---

### Mitchell C. Whitlock, Appellant

v.

### Whataburger Restaurants, LP, Individually and d/b/a Whataburger #481; Whataburger Restaurants LLC; and Whataburger Ventures, LLC, Appellees

---

### FROM THE 459TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-20-002947, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Mitchell C. Whitlock appeals a summary judgment rendered in favor of Whataburger Restaurants, LP, Individually and d/b/a Whataburger #481; Whataburger Restaurants LLC; and Whataburger Ventures, LLC (collectively, "Whataburger"). In two issues, Whitlock asserts that the trial court (1) abused its discretion by striking the causation testimony presented by his expert witness and (2) erred by granting Whataburger's no-evidence motion for summary judgment on his claim to have contracted food poisoning from food he ate at a Whataburger restaurant. We will affirm.

## BACKGROUND

Whitlock sued Whataburger alleging that, after eating a grilled chicken salad prepared and served to him by Whataburger employees "on or about June 2, 2018," he

contracted severe food poisoning that required medical care, including hospitalization. Whitlock asserted that he was diagnosed with a campylobacter infection, which he alleged was caused by his having eaten the grilled chicken salad served to him by Whataburger. Whitlock brought causes of action for negligence, strict liability, breach of warranty, and deceptive trade practices.

Whataburger filed a motion to strike Whitlock's expert medical causation evidence for lack of reliability and filed a no-evidence motion for summary judgment on the grounds that Whitlock presented no competent evidence or expert testimony that (1) any Whataburger product contained campylobacter bacteria, (2) Whataburger served a contaminated or adulterated product, (3) his infection was caused by Whataburger, or (4) his intestinal injuries or hospitalization were caused by Whataburger. The trial court granted the motion to strike and excluded all causation testimony provided by Whitlock's expert, Dr. Jose Stroute. After a hearing, the trial court granted Whataburger's no-evidence motion for summary judgment.

**DISCUSSION**

A no-evidence motion for summary judgment must be granted if: (1) the moving party asserts that there is no evidence of one or more specified elements of a claim or defense on which the adverse party would have the burden of proof at trial and (2) the respondent produces no summary judgment evidence raising a genuine issue of material fact on those elements. *See* Tex. R. Civ. P. 166a(i). In reviewing a no-evidence motion for summary judgment, we view all of the summary judgment evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving all doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 823-25 (Tex. 2005).

2

Each of Whitlock's causes of action shares a common element—that eating the grilled chicken salad was the cause in fact of his campylobacter infection. *See Doe v. Boys Club of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995) (negligence requires showing of proximate cause, which consists of cause in fact and foreseeability); *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 667 (Tex. 1999) (strict liability requires showing of producing cause, which requires only proof of cause in fact, not foreseeability); *BMLA, Inc. v. Jordan*, 650 S.W.3d 564, 574 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (breach of implied warranty of fitness for particular purpose requires showing of proximate cause); Tex. Bus. & Com. Code § 17.50(a)(1) (elements of Deceptive Trade Practices Act claim include that act was producing cause of consumer's damages). As applied to this case, the test for cause in fact is whether the illness would not have occurred if Whitlock had not eaten the grilled chicken salad. *BMLA, Inc.*, 650 S.W.3d at 574. A finding of cause in fact may be based on circumstantial evidence, but cannot be supported by mere conjecture, guess, or speculation. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). Similarly, a fact may not be inferred from circumstantial evidence that could support multiple inferences if none are more probable than the others. *Lozano v. Lozano*, 52 S.W.3d 141, 148 (Tex. 2011). In addition, an inference drawn only from other inferences (rather than direct evidence) is not legally sufficient evidence. *Marathon Corp.*, 106 S.W.3d at 728.

Expert testimony is necessary to establish causation as to medical conditions outside the common knowledge and experience of the factfinder. *JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 162 (Tex. 2015). To constitute evidence of medical causation, an expert opinion must rest on reasonable medical probability. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 500 (Tex. 1995). Reasonable probability is determined by the substance and

3

context of an expert opinion, rather than the use of any particular words. *Id.* Thus, where the substance of an expert's testimony establishes only a mere possibility, rather than a reasonable probability, of causation, it is no evidence of causation. *See Schaefer v. Texas Emp'rs Ins. Ass'n*, 612 S.W.2d 199, 204-05 (Tex. 1980). Moreover, to be admissible, an expert's opinion must be relevant and reliable. *See State v. Central Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009); *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 628 (Tex. 2002). To be relevant, the expert's opinion must be based on the facts; to be reliable, the opinion must be based on sound reasoning and methodology. *Central Expressway*, 302 S.W.3d at 870; *Zwahr*, 88 S.W.3d at 629. Expert testimony is unreliable if it is no more than "subjective belief or unsupported speculation." *Zwahr*, 88 S.W.3d at 629; *E.I. Dupont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558-59 (Tex. 1995). While a medical causation expert need not disprove or discredit every possible cause other than the one espoused by him, a trial court does not abuse its discretion by excluding testimony of an expert who failed to rule out other plausible causes of the illness presented by the evidence. *See TXI Transp. Co. v. Hughes*, 306 S.W.3d 230, 237 (Tex. 2010) ("An expert's failure to rule out alternative causes of an incident may render his opinion unreliable."); *Robinson*, 923 S.W.2d at 559 ("An expert who is trying to find a cause of something should carefully consider alternative causes. [An expert's] failure to rule out other causes of the damage renders his opinion little more than speculation." (citation omitted)).

### *Did the trial court err by striking Dr. Stroute's causation testimony?*

We review a trial court's exclusion of expert testimony for an abuse of discretion. *See Gamill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718-19 (Tex. 1998). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Robinson*,

923 S.W.2d at 558. A reviewing court cannot conclude that a trial court abused its discretion if, in the same circumstances, it would have ruled differently or if the trial court committed a mere error in judgment. *Id.* Our task is to determine whether the trial court abused its discretion in striking Dr. Stroute's causation testimony. We conclude that it did not.

In his expert report, Dr. Stroute stated that his review of Whitlock's testimony revealed that he ate a grilled chicken salad at a Whataburger restaurant on June 2, 2018, and that, "[w]ithin 48 hours he became ill with nausea, vomiting, and diarrhea." Dr. Stroute stated that Whitlock's medical records revealed that, ten days after eating the grilled chicken salad, testing and lab work indicated that Whitlock "had *Campylobacter jejuni* gastroenteritis." Dr. Stroute provided the following "opinions regarding Mr. Whitlock's illness to a high degree of medical certainty":

> Mr. Whitlock developed bacterial gastroenteritis due to *Campylobacter jejuni* acquired by eating the grilled chicken salad at the Whataburger restaurant. This opinion is based on the timing between the food ingestion and the onset of symptoms, and the well-known association between poultry meat and the carriage of *Campylobacter jejuni*.

Thus, Dr. Stroute's causation testimony is based entirely on the fact that (1) Whitlock became sick after eating the grilled chicken salad within the bacteria's incubation period and (2) there is a "well-known association" between poultry meat and the "carriage of *Campylobacter jejuni*." In his deposition, Dr. Stroute confirmed that *Campybolacter jejuni* can come from many sources including water, meats other than poultry, fruits, vegetables, and unpasteurized milk. Dr. Stroute testified that he was not provided with a complete record of everything Whitlock ate before the onset of his symptoms and the diagnosis of gastroenteritis but that, based on a review of

5

Whitlock's deposition, he understood that Whitlock was eating "a variety of food." When asked what other sources of *Campylobacter jejuni* he had ruled out, Dr. Stroute testified:

> Well, I mean, based on the fact that I haven't talked to Mr. Whitlock, I cannot rule out much more than what I see written in the record, right? I have not interviewed Mr. Whitlock. I'm not going to interview him, so, I mean, I cannot rule out anything else because I cannot interview him myself.

Dr. Stroute's opinion was based on Whitlock's becoming ill after eating the grilled chicken salad, the fact that poultry meat is known to carry *Campylobacter jejuni*, and because Whitlock's symptoms arose within the incubation period for illness caused by the bacteria. But Dr. Stroute's testimony also shows that there are many other foods and drinks that can be sources of *Campylobacter jejuni*; that Whitlock had eaten a "variety of food," including something from a "taco restaurant," within the incubation period for the bacteria before becoming ill; and that Dr. Stroute did not learn or attempt to find out what other foods Whitlock had eaten in order to rule out other sources of the bacteria. Dr. Stroute's testimony demonstrates that he failed to consider and rule out other plausible causes of the Whitlock's illness. On this record, we cannot say that the trial court abused its discretion by determining that Dr. Stroute's causation testimony was not reliable and excluding it. *See Robinson*, 923 S.W.2d at 559 ("An expert who is trying to find a cause of something should carefully consider alternative causes. [An expert's] failure to rule out other causes of the damage renders his opinion little more than speculation." (citation omitted)).

### *Did the trial court err in granting the no-evidence motion for summary judgment?*

On appeal, Whitlock asserts that the trial court erred in granting the no-evidence motion for summary judgment because he raised a genuine issue of material fact on the element

6

of causation by submitting, in response to the motion, the declaration of Dr. Stephanie H. Elmore, M.D., who opined that Whitlock's illness was caused by eating the grilled chicken salad at Whataburger. According to her affidavit, Dr. Elmore had been Whitlock's "primary physician" for five and a half years. Dr. Elmore stated that "based on his patient history," Whitlock ate a salad with grilled chicken at a Whataburger restaurant on June 2, 2018, and within 48 hours became ill with nausea, vomiting, and diarrhea. Dr. Elmore stated that lab work and tests done ten days later indicated that Whitlock had *Campylobacter jejuni* enteritis. Dr. Elmore provided the following "opinions regarding Mr. Whitlock's illness to a high degree of medical certainty":

> Mr. Whitlock developed bacterial gastroenteritis due to *Campylobacter jejuni* acquired by eating the grilled chicken salad at the Whataburger restaurant. This opinion is based on the timing between the food ingestion and the onset of symptoms, and the well-known association between poultry meat and the carriage of *Campylobacter jejuni*.

Whataburger objected to Dr. Elmore's causation testimony, arguing that it appeared to be "copied verbatim" from Dr. Stroute's report and, like Dr. Stroute's testimony, was not reliable evidence of medical causation. The trial court sustained Whataburger's objection to Dr. Elmore's causation testimony and granted the no-evidence summary judgment motion. We conclude that the trial court did not abuse its discretion in sustaining Whataburger's objection to Dr. Elmore's testimony, which, like Dr. Stroute's, is based solely on the temporal connection between Whitlock's having eaten the grilled chicken salad and his becoming ill and the "association" between poultry meat and the "carriage of *Campylobacter jejuni*." Dr. Elmore, like Dr. Stroute, failed to consider and rule out other plausible sources of the *Campylobacter jejuni* presented by the evidence. In the absence of any evidence raising a fact issue as

to whether Whitlock's illness was, in reasonable medical probability, caused by the grilled chicken salad he ate at the Whataburger restaurant, the trial court did not err when it granted Whataburger's no-evidence motion for summary judgment.

## CONCLUSION

Having concluded that the trial court did not err in excluding Whitlock's causation testimony or by granting Whataburger's no-evidence motion for summary judgment on this record, we affirm the trial court's judgment.

_____

Karin Crump, Justice

Before Justices Triana, Theofanis, and Crump

Affirmed

Filed: April 10, 2025